UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA MARIE ALLEN,

           Plaintiff,

   -vs-


CAROLYN W. COLVIN, Commissioner
of Social Security,

          Defendant.


_____

**DECISION AND ORDER**
**No. 6:12-CV-6682(MAT)**

## INTRODUCTION

Lisa Marie Allen ("Allen" or "Plaintiff"), represented by counsel, brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB") and finding her ineligible for supplemental security income ("SSI"). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

On July 30, 2013, the Commissioner moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence. On August 1, 2013, Plaintiff cross-moved for summary judgment seeking to reverse the Commissioner's decision judgment. For the reasons set forth below, this Court finds that there is substantial evidence in the record to support the Commissioner's decision. Therefore, the

Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

## PROCEDURAL HISTORY

On July 8, 2010, Plaintiff protectively filed applications for SSI and DIB, alleging an onset date of January 1, 2007. T.154-156. Plaintiff, who was 27 years old at the onset date, alleged that she was unable to work due to anxiety, depression and post-traumatic stress disorder. T.200. After her benefits applications were denied, Plaintiff requested a hearing, which was conducted by Administrative Law Judge MaryJoan McNamara ("the ALJ") on September 26, 2011. T. 27-72. The ALJ denied Plaintiff benefits in a written decision issued on October 21, 2011. T. 12-22. On November 8, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. T. 1-4. This action followed.

### FACTUAL BACKGROUND

**A. Educational and Vocational Background**

Plaintiff is a 34 year old woman with a twelfth grade education and one year of community college. T. 36-37. She worked at a cleaning service from 2001 through 2009, as a cleaner at a gas station from 2008 through February, 2010 and in sandwich shops from 1995 through 2000. T. 201. Allen testified that she worked for one employer of various food establishments off and on for 8 years doing everything from preparing food, stocking shelves to cashiering. T. 38. Allen testified that she had difficulties maintaining a job

because she failed to show up for work or had hostile exchanges with her bosses. T. 38, 43.

Plaintiff was married in 2007 in an arranged marriage to an Arabic man. T. 285. She described her husband as demanding and abusive. T. 285. She has two children from different fathers who are not in her custody. T. 275. Allen left her husband and entered a homeless shelter. She had a history of cocaine, cannibas and alcohol dependence but claimed she had not used since 2008. T. 285.

Allen indicated in her application form that she was able to cook, clean and do laundry for herself. T. 212. She relies on her mother for cleaning and needs reminders to take her medication. T. 212. Allen relies on public transportation to get around and does her own grocery shopping. T. 213. Allen indicated that she has anxiety with taking the bus at times and her mother accompanies her in these circumstances. T. 213.

Allen claims that she has difficulty paying attention and completing what she has started. T. 215. She claimed to have "cursed out" bosses and "walked out of jobs numerous times." T. 215. She claims her manic depression causes her to either have uncontrolled outbursts of yelling, screaming or throwing things when manic or sleeping a lot when depressed. T. 215. Allen claims that stress can trigger panic attacks during which she feels dizzy, loss of vision and can black out. T. 216.

Plaintiff was taking Zoloft and Clonazepam at the time of the hearing. She testified that the Clonazepam was making her tired but that she needed it for anxiety. T. 45-46. In the last eight months, Plaintiff testified that she did not get out of bed four or five days a week. T. 46. Plaintiff testified that men are a trigger for a panic attack. T. 47. At the time of the hearing, Plaintiff did not take the bus and instead relied on her father or uncle to take her places. T. 48. Her father gave her work to do part time at his business but she can only handle going once a week for five hours at a time. T. 48.

B. Medical Background

Allen was initially placed on medication for emotional issues when she was 12 years old. T. 274. She was prescribed Lithium and Prozac when she was 14. After disclosing a rape to her father and step mother, Plaintiff claims to have been beaten and humiliated. T. 274. Allen attempted suicide by slitting her wrists after the beating and was hospitalized at Strong Psychiatric Unit. T. 275. Allen was placed at Hillside Children's Center and in two out-of-state placements after which she was placed in foster care. T. 275. Plaintiff was hospitalized once in 2008, for deep depression. T. 276.

Medical records dated April 30, 2008 from Genesee Mental Health Center/Rochester General Hospital indicate that Plaintiff wanted to start Lithium and Prozac again. T. 340. Plaintiff was in a good mood, smiled, had clear thoughts and she reported that she had a good

support system and was able to keep her appointments. T. 340. Allen was noted to be cooperative, with organized thoughts and was goal directed. T. 340. The record also indicated that Plaintiff had mood swings. She was restarted on Lithium and Prozac. T. 340. At a follow up appointment on May 29, 2008 with her husband and father-in-law, Plaintiff admitted to mood swings. T. 341. She felt depressed and irritable many days. Plaintiff was using her medications sporadically and was exercising poor judgment. T. 341. Plaintiff was alert, oriented and cooperative with rapid speech. Her family was willing to make sure Plaintiff complied with medications and she was prescribed Giodon to help sleep better. T. 341.

Plaintiff went to her June, 2008 appointment 30 minutes late but arrived in a good mood with her daughter. T. 342. She reported that she was better without manic symptoms. T. 342. Allen was well groomed, cooperative, organized of thought with good insight and concentration. She was continued on Lithium, Giodon and Prozac and noted that her judgment to be only fair given her tardiness to the appointment. T. 342. The following month, Plaintiff was a 'no-show' to her appointment. T. 343.

In August, 2009, Plaintiff went to Genesee Mental Health Center to re-engage with medications after being off mental health medications for five months. T. 344. Plaintiff appeared cooperative, organized of thought and goal directed. T. 344. She was restarted on Lithium. T. 344. The next month, Plaintiff was a no show for her

appointment. T. 345. In the discharge notes dated July 7, 2010, Plaintiff was described as non-compliant with her medications but was maintaining gains, was future oriented and had adequate housing without signs of dangerousness. T. 346. She was noted to have a supportive husband and no longer had signs of mania nor psychosis. T. 346. Allen requested a transfer to a different outpatient provider. T. 346.

Plaintiff was treated by therapist Katherine Cariola and Doctor Reddy at the Genesee Street Camput Putpatient Mental Health Clinic of Unity Hospital for depression, alcohol, cannibis, cocaine dependence and borderline personality disorder from March, 2010 through August, 2011. T. 273-339, 384-436, 444-487. She was diagnosed with major depression disorder, recurrent, severe without psychotic feature, alcohol, cocaine and cannibas dependence in full remission and an anxiety disorder. T. 285. Allen was referred for treatment for dramatic mood swings, anxiety and depression. T. 286. Allen was treated with both psychiatric medications as well as cognitive behavior therapy to develop coping mechanisms to help her deal with anxiety and depression. However, Plaintiff was not always compliant in taking her medications as prescribed. T. 445

In June and July, 2011, Plaintiff began the process to seek gaining custody of her daughter and to change therapists at the same outpatient clinic. T. 448, 454, 462. On July 12, 2011, Plaintiff was preparing to appear in Court to attempt to gain custody of her

daughter from her ex-husband. T. 462-463.  In her August 2011 therapy appointment, Plaintiff discussed the reasons she is late for or misses appointments altogether. T. 474. She reported that the court hearing did not go well as she is intimidated by her daughter's father. T. 474.  Allen had run out of prescription medications Zoloft and Klonopin because she missed appointments with her psychiatrist. T. 474-75. The therapist noted that Allen was dependent on her father for financial and emotional support and was not motivated to establish independence. T. 475.

An independent psychological medical evaluation of Plaintiff was conducted on October 7, 2010 by Dr. Kavitha Finnity. T. 348-351. Dr. Finnity noted that Plaintiff was divorced, living alone and had two children with whom she had no contact. T. 348. She also took note that Plaintiff was being seen at Unity Mental Health by Katherine Cariola every two weeks for psychotherapy and by Dr. Reddy once a month for medication management. T. 348. Plaintiff was taking Zoloft and Konopin. Allen reported depressive symptoms including dysphoric mood, loss of interest, social withdrawal and loss of energy. She also reported manic phases with increased energy, anger and decreased need for sleep. T. 348. Allen's mother, aunt and grandfather suffer from schizophrenia. T. 349. Plaintiff appeared well groomed, with normal behavior and eye contact. T. 349. She also had coherent thought but was anxious. Plaintiff's concentration was intact, able to do serial 3s accurately and she had intact recent and remote

memory skills. T. 349. Cognitive functioning was average and insight and judgment fair. T. 350. Plaintiff was able to dress, bathe, and groom herself as well as cook, clean and do laundry. She was able to manage her own money and had a good relationship with her family. T. 350. Dr. Finnity found that Allen could follow and understand simple directions and perform simple tasks. She had some difficulty with attention and concentration but could maintain a regular schedule. T. 350. She could learn new tasks and perform complex tasks as well as make appropriate decisions. Dr. Finnity did find that Plaintiff had some difficulty relating to others and dealing with stress. T. 350. Plaintiff was diagnosed with bipolar disorder and anxiety disorder. T. 350. Dr. Finnity recommended that Plaintiff continue with therapy. T. 350.

Also on October 20, 2010 a Psychiatric Review Technique form for Plaintiff was completed by D. Inman-Dundon. T. 352-368. Dr. Inman-Dundon noted that Plaintiff had substance addiction disorders, anxiety related disorders and affective disorders. T. 352. Dr. Inman-Dundon concluded that Plaintiff had medically determinable anxiety related, biploar and substance addiction impairments that did not precisely satisfy the diagnostic criteria. T. 355, 357, 360. Dr. Inman-Dundon concluded that Plaintiff had a "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace and that there was insufficient

evidence of repeated episodes of deterioration. T. 362. Further, Dr. Inman-Dundon found that the evidence did not establish the presence of the "C" criteria for either the affective disorder or the anxiety related disorder. T. 363. The Mental Residual Functional Capacity Assessment completed by Dr. Inman-Dundon found that Plaintiff's ability to remember locations and work-like procedures and to understand and remember very short and simple instructions was not significantly limited. However, her ability to understand and remember detailed instructions was "moderately limited." T. 366. Plaintiff's ability to carry out very s short and simple instructions, to sustain an ordinary routine without special supervision and to work in coordination with or proximity to others without being distracted was not significantly limited. T. 366. However, Plaintiff was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. T. 366. In terms of social interaction, Plaintiff was not significantly limited in her ability to ask simple questions or request assistance nor in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. T. 367.

Plaintiff was found to be moderately limited in her social abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. T. 367. Dr. Inman-Dundon found no lmitations with Plaintiff's ability to be aware of normal hazards and to take appropriate precautions nor in her ability to travel in unfamiliar places or use public transportation. She was found to be moderately limited in her ability to respond appropriately to changes in the work setting and her ability to set realistic goals or make plans independently of others. T. 367.

D. **The Vocational Expert Testimony**

The ALJ asked the vocational expert ("the VE") to assume an individual of Plaintiff's age, education and work experience with no exertional limitations and is able to understand, follow and carry out simple directions and instructions as well as learn new tasks, but has some difficulty relating to others and should only interact with others on an occasional basis in a low stress environment. T. 87-68. The VE testified that such an individual would not be able to perform Plaintiff's past relevant work as a cleaner, food service worker or gas station clerk. T.68. However, the VE testified that there would also be jobs such as a laundry sorter or lens inserter. T. 68. When considering the same individual but who would likely be off task 10 percent of the time due to attention or concentration

problems, the VE testified that such an individual could not do the past relevant work but could do the work of laundry sorter, lumber sorter or lens inserter. T. 69. If such an individual would be off task 20 percent of the time or is likely to miss work or not maintain a schedule, the VE testified that there would not be any work available. T. 69-70.

**DISCUSSION**

**I.    General Legal Principles**

I. Scope of Review

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the

pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>see generally Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

The Commissioner's decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); <u>see also</u>, <u>e.g.</u>, <u>Machadio v. Apfel</u>, 276 F.3d 103, 108 (2d Cir. 2002). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002).

This deferential standard is not applied to the Commissioner's conclusions of law, however. <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984). This Court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. "Failure to apply the correct legal standards is grounds for reversal." <u>Townley</u>, 748 F.2d at 112. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).

## II.  The ALJ's Decision

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, the ALJ followed the Social Security Administration's five step sequential analysis evaluating disability benefits. T. 14-22. The five step analysis requires the ALJ to consider the following: 1) whether the claimant is performing substantial gainful activity; 2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; 3) whether the claimant suffers a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; 4) if not, the ALJ next considers whether the impairment prevents the claimant from doing past relevant work given his or her residual functional capacity; 5) if the claimant's impairments prevent his or her from doing past relevant work, whether other work exists in significant numbers in the national economy that accommodates the claimants residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Under step one of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time during the period from her alleged onset date of January 1, 2007. T.14. Although Plaintiff had worked after the application date, the ALJ specifically

13

noted that the work did not rise to the level of substantial gainful activity. T.14.

The ALJ found, at step two, that Plaintiff has the following severe impairments: anxiety disorder, major depressive disorder, borderline personality and post-traumatic stress disorder. T.15.

At step three, the ALJ concluded that the claimant's impairment or combination of impairments do not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. She noted that Plaintiff's depression does not meet or equal the criteria for listing 12.04, 12.06 or 12.08. T. 15-16.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with no exertional limitations but some restrictions. T. 16. The ALJ specifically found that Plaintiff was able to understand, follow, and carry out simple directions and instructions as well as maintain a regular schedule and learn new tasks but has some difficulty interacting with others and should only interact with others on an occasional basis. In addition, Plaintiff needed a low stress environment and is likely to be off-task 10 percent of the time due to problems with concentration or attention. T. 16. The ALJ found that Plaintiff could no longer perform her past relevant work but that Plaintiff was able to perform the requirements of laundry sorter, lumber sorter, and lens inserter. T. 21.

Plaintiff argues that the ALJ erred by: 1) failing to properly evaluate the medical evidence in establishing the Plaintiff's residual functional capacity; 2) failing to properly evaluate Plaintiff's credibility; and 3) relied on invalid vocational expert testimony.

## III. <u>Plaintiff's Arguments</u>

### A. <u>Substantial Evidence Supports the Residual Functional Capacity Finding</u>

Plaintiff argues that the ALJ erred in establishing Plaintiff's RFC by failing to completely incorporate the limitations indicated by Dr. Finnity and Dr. Inman-Dundon in the RFC; that the ALJ's finding that Plaintiff would be off-task 10 percent of the day is "arbitratry and speculative;" and that the ALJ should have developed the record by requesting an opinion regarding Plaintiff's limitations from Dr. Reddy or Plaintiff's therapists.

Residual Functional Capacity refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms. <u>Melville v. Apfel</u>, 198 F.3d. 45, 52 (2d Cir. 1999). SSR 96-8p explicitly deals with determining residual functional capacity and requires a "detailed assessment." Primary focus must be on "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, <u>Title II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996

15

WL 374184, at *1, 7 (SSA July 2, 1996). What is most essential in this phase is evaluation of functional effects of mental impairments on work-related activities such as understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. See id., at *6.

Here, the ALJ gave an extensive analysis of the record regarding Plaintiff's condition, treatment and abilities. T. 16-20. The ALJ assessed Allen's mental residual functional capacity focusing on limitations on customary work activities such as understanding, carrying out, and remembering instructions; using judgment in making work-related decision; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting.

The ALJ noted Plaintiff's testimony regarding her daily activities, work history and feelings of anxiety in a work setting. T. 18. The ALJ found Plaintiff to be "very articulate" and noted that as recently as May of 2011 Plaintiff scored 58 in a global assessment functioning rating reflecting "moderate" difficulty in social or occupational functioning. T. 18. The ALJ took into account that Plaintiff lives by herself independently, was able to dress, bathe and groom herself and manage her own money. T. 18. The ALJ fully

16

evaluated the medical records which reflected that Plaintiff's thought processes were "normal", behavior was "appropriate" and was considered oriented "x3". T. 19. The ALJ points out that the only indications that Plaintiff's difficulty with concentration was when she forgot appointments or to refill prescriptions. T. 19.

The ALJ relied on the RFC assessments of Dr. Finnity and Dr. Inman-Dundon. She noted that these evaluations were consistent with the treatment records in that they found Plaintiff to be oriented and that she had intact attention and concentration skills. T. 19. Unlike the facts set forth in Thompson v. Astrue, 2012 WL 2175781 (W.D.N.Y. May 30, 2012) cited by Plaintiff, here, the ALJ's analysis was much more comprehensive than mere conclusory statements. Indeed, the ALJ does discuss the degree of limitation Plaintiff had with her "moderate" degree of limitation with regard to social functioning and concentration, persistence or pace. The ALJ noted Plaintiff's ability to live independently, mange her own money and shop for herself. T. 18. The ALJ relied on Dr. Finnity's opinion that although Plaintiff may have some difficulty in maintaining attention and concentration as well as relating to others and dealing with stress, Plaintiff was able to follow and understand simple directions, maintain a regular schedule, maintain simple routine, learn new tasks and make appropriate decisions. The ALJ also relied on Dr. Inman-Dundon's opinion that Plaintiff was oriented, her attention and concentration skills were intact and that Plaintiff

demonstrated average cognitive function and her insight and judgment were fair. T. 19.

Plaintiff's claim that the ALJ failed to develop the record, as required by 20 C.F.R.§404.1512(d), (e), insofar as she failed to obtain functional limitations from a treating source, is meritless. Indeed, an ALJ is required to contact a claimant's physician for additional information regarding a plaintiff's impairments when the evidence from a treating physician is inadequate for the ALJ to determine whether the claimant is disabled. 20 C.F.R. § 416.912(e)(1). Where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Crawley-Nunez v. Astrue, 08-CV-0295-A, 2009 WL 5171880, *6 (W.D.N.Y. Dec. 22, 2009), citing, Rosa v. Callahan, 168 F.3d. 72, 79, n. 5 (2d Cir. 1999).

In this case, the ALJ relied on Dr. Finnity and Dr. Inman-Dundon's assessments in determining Plaintiff's RFC, and specifically found that their assessments were supported by the record as a whole as well as Plaintiff's own testimony. Tr. 19. Indeed, the record is replete with evidence from Plaintiff's treating therapists supporting these findings. Treatment records throughout the relevant period showed Plaintiff to be alert, fully oriented, well-groomed,

cooperative, pleasant, with appropriate attire, thought content that was goal directed, logical and coherent, with normal perceptions, with good concentration and memory and good impulse control and fair to good judgment. T. 294, 297, 301, 305, 318, 327, 340, 342, 344, 385, 390, 394, 400, 404, 408, 414, 418, 428, 432, 445, 449, 455, 464, 468.

### B.  The ALJ Properly Determined Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide sufficient reasons to discount Plaintiff's credibility regarding her limitations. The ALJ considered Plaintiff's allegations on her ability to work. T. 16-20. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that the evidence does not support a finding that those impairments are so severe that they would preclude vocational function.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013). Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility. Id.  Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

Here, the ALJ measured Plaintiff's credibility by evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC. She discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, and the treatment of Plaintiff's symptoms. The ALJ noted the fact that Plaintiff relies on her father for transportation but pointed out that she was able to do a variety of activities of daily living. She lived independently, was able to dress, bathe and groom herself, cook, clean, do laundry, shop, and manage money. Because her reasoning for doing so is "set forth ... with sufficient specificity...[and] is supported by substantial evidence," the ALJ's credibility determination is conclusive. Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y. 1999)(internal quotation marks and citation omitted).

C. The ALJ's Step Five Determination Is Supported by Substantial Evidence.

The ALJ relied upon the testimony of a VE in determining that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." T.21. Plaintiff contends that the VE's opinion cannot provide substantial evidence to support the ALJ's decision because it was based upon an incomplete hypothetical question.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." Balsamo v. Chater, 142 F.3d 75 (2d Cir.

1998). The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. See DeLeon v. Secretary of Health and Human Servs., 734 F.2d. 930, 936 (2d Cir. 1984) (finding that, as a result of the ALJ's failure to present the full extent of the claimant's physical disabilities, the record provided no basis for drawing conclusions about whether the claimant's impairments rendered him disabled). The ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §404.1560(b)(2). There is substantial evidence in the record to support the ALJ's RFC assessment.

## CONCLUSION

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence in the record and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 7). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No.

8), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

Honorable Michael A. Telesca

United States District Judge

DATED:     December 19, 2013

           Rochester, New York